320-332, the people of the state of Illinois, Appalachia v. Shania Nicole Lee, Appellant. Thank you. Good afternoon. Ms. Kelly, are you ready to start? Yes, thank you. Good afternoon. May it please the court, counsel. I am Kelly Taylor with the Office of the State Appellate Defender on behalf of the Appellant Ms. Shania Lee. Ms. Lee is appealing her conviction for first-degree murder following a jury trial. The then 31-year-old with no violent criminal history received a sentence of 50 years imprisonment. There are two issues in the case. First, the defense counsel was ineffective for failing to object to a gruesome and disturbing body camera video that was shown to the jury, and second, that the circuit court abused its discretion in sentencing Ms. Lee to 50 years imprisonment. At trial, the state showed State's Exhibit 40, which is a body camera video that depicted the decedent, Markeisha Jeffries, bleeding out on the ground. This was just minutes after the stabbing, and a large pool of bright red blood can be seen, and she's laying on the ground. She's barely conscious, and her brother, who was present at the scene, is trying to prop up her body, and he's yelling at her, talk, Keisha, talk, think about your kids, and he's pleading with law enforcement, please help my sister, do something. She's gargling, and then you can hear her mother, who was also present during the fight, she screams, that's my daughter, and it's just anguished. The trial judge, who was presumably desensitized to seeing videos such as this through years of presiding in criminal law matters, said that he was bothered by this disturbing video. I myself have been in criminal law for almost a decade, and I found this quite upsetting. I can only imagine the visceral reaction that the jurors must have had when watching this, especially when they're not exposed to these kind of videos regularly, especially when there was no reason to play the video. There was no dispute about the cause of death or the injuries in this case. The jury had already seen several photos of the scene, including a blood-stained parking lot. The jury watched a video of the fight itself, which then shows Ms. Jeffries laying on the ground in front of a police cruiser, and counsel was ineffective for objecting to the admission of this gruesome body camera video. The state argues in its brief that this was trial strategy, without actually specifying what the trial strategy was here. There was no sound trial strategy for introducing this video. The state argues that it was relevant to the state's case because the photos and the videos that the jury saw didn't show the defendant or whether she was actually sprayed by the mace, but this body camera video also doesn't show whether or not defendant was sprayed by mace because defendant's not present in the first two minutes of this video. She's not seen at all. What was seen in the video was just an extreme close-up of Jeffries, just feet away from the officer's camera on his chest, leaning over her as she lay on the ground, the anguished family members, and the only reason that this video was played was to inflame the passions of the jury. Good trial strategy in this case would have been if defense counsel had filed a motion in limine beforehand to keep the video out. If that were not successful, he could have asked the state to edit the video or at least exclude this audio that the jury heard. If that weren't successful, he should have objected. He should have moved for a mistrial, and at the very least, he should have preserved the issue in a post-trial motion, but none of these things were done. Defense counsel simply acquiesced when the court asked if it was fine to play this video, and he should not have. His performance in this case was unreasonable, and it prejudiced the defendant. The case was closely balanced as to the self-defense aspect of the case, even if it was an unreasonable belief in self-defense. The state says in its brief that there was no evidence whatsoever that the defendant was justified in stabbing Jeffries, but that's just not true. The defendant testified. Her testimony was evidence. She described how her head was down. She was locked in a mutual hand-to-hand combat with Ms. Jeffries. Her hair was being pulled. It was just a melee with several other people and screaming, and she was afraid of from this fight, and so she reached out with a single jerk motion and with a knife. Also, Roger Pickett testified that Ms. Jeffries was the one who hit defendant first, and everyone said that Ms. Jeffries was the one who sprayed the mace first, and most importantly, the court gave the jury instructions on second-degree murder, imperfect self-defense, and provocation, so clearly there must have been some evidence here about self-defense and imperfect self-defense. In addition, Ms. Jeffries had a vendetta against defendant. She only showed up to the bank building after she learned that defendant would be there or learned that she was already there. She was the first one to spray the mace, and this was just an all-around mutual combat situation. Furthermore, the jury asked for clarification on the third proposition of first-degree murder, which was whether defendant was justified in using the force she used, so this was not an overwhelmingly easy decision for the jury, and this video likely swayed them in the direction of a conviction just with the emotion and the gruesome nature of the video. Because the evidence surrounding self-defense was closely balanced, viewing the disturbing body camera definitely prejudiced the defendant here. Because defense counsel's performance led to Ms. Lee's conviction, she respectfully requests that this honorable court reverse her conviction for first-degree murder and remand the case for further proceedings. In the event that this court does not reverse Ms. Lee's conviction, it should reduce her sentence. The court abused its discretion when it sentenced Ms. Lee to a 50-year sentence. There was plenty of mitigation, including the statutory mitigation of a fairly minor criminal record. She had two convictions for cocaine from her early 20s when she was battling drug abuse. She had a 2010 fine for disorderly conduct and she had three traffic citations, so a much more minor record and a certainly non-violent record that most people with first-degree murder convictions would have. Ms. Lee was also a high school graduate. She had some college classes under her belt. She had steady employment history, strong familial relationships. She was even a caregiver for an unrelated six-year-old because his mother had a drug abuse problem. At sentencing, Ms. Lee was remorseful and she apologized. And without minimizing the offense here or the tragedy that happened, Ms. Lee did not set out to kill Ms. Jeffries. As I stated before, Ms. Jeffries came to her. This was mutual combat and a single stab to someone's leg typically does not kill someone. She just happened to hit the femoral artery and it was just horrible luck that Ms. Jeffries died from this injury. Furthermore, Ms. Lee was charged with knowledge and not intent in this case. The sentencing range was 20 to 60 years. Hypothetically, if Ms. Lee had sought out in a premeditated attack and intentionally stabbed Ms. Jeffries in the torso near her internal organs, which are usually more likely to cause death, the sentence she could have gotten would have only been 10 years higher. As it is, she will not be released from prison until she's 81 years old and this is a de facto life sentence. The court clearly did not consider rehabilitation in this case or else it would have imposed a high sentence that would not leave Ms. Lee leaving prison as an elderly person. For these reasons, Ms. Lee respectfully requests that this honorable court reverse her conviction for first-degree murder and remand for further proceedings. If this court does not grant relief in the form of a remand, she would ask the court to reduce her sentence to a more reasonable length of time. Thank you. Are there any questions for Ms. Taylor? Ms. Bella. Good afternoon, your honors. May it please the court. My name is Jamie Bella on behalf of the people of the state of Illinois. As counsel noted, there are two issues before the court. The first regarding whether the trial counsel was ineffective for failing to object to the admission of the officer's body cam video. And second, whether the trial court uses discretion in sentencing defendant to 50 years in prison. Turning to the first issue, claims raising a challenge to the ineffectiveness of the counsel present a question of law that are subject to de novo review. The defendant's argument that counsel was ineffective as stated was its premise on the assertion that the video in the responding officer's body cam was not admissible because the evidence was irrelevant and admitted for the sole purpose of garnering sympathy from the jury and that it was cumulative of other evidence already admitted. The people respond that counsel was not ineffective under Strickland because counsel's performance did not fall below an objective standard of reasonableness. And even if the video was inadmissible, the defendant cannot show that the video had had the video been excluded. The outcome of her trial would have been different as required under the Strickland standard. On the first point, had counsel objected to the admission of this video, the trial court would have had to weigh the probative value and the prejudicial effect to determine whether the evidence was relevant to a material issue. And if so, whether the prejudicial effect of the evidence substantially outweighed its probative value. This determination, as stated by the Supreme Court, is dependent upon the circumstances of the particular case and the weight assigned to the probative value and prejudicial effect would have been within the discretion of the trial court. So although this claim is reviewed de novo, the determination of whether an objection would have been sustained would have been subject to the abuse of discretion on behalf of the trial court. In this case, the defendant did not deny that she stabbed the victim, but responded that she did so in self-defense. In support of that defense, she claimed that she had mace that was sprayed by the victim had gotten into her eyes and that she was effectively blind and that she was engaged in mutual combat and that she could not see as a result. The defense theory in this case was that Markeisha, the victim, initiated the conflict that led to the fight in which she was fatally stabbed. Central to that argument was the defendant's claim that the mace had blinded her. So the video would have been relevant to a material issue in the case. Because in the video, so there's actually two videos, I'm sure your honors have watched them. The first video is, it was taken from a cell phone video and it was taken upstairs at the Associated Bank pointing down into the parking lot where the fight had started. So as the video we're talking about, is that correct? Yes, correct. Yes. It's the first video, which is the cell phone. And then the second video is the officer's body cam. In the upstairs video from the cell phone, you can see the video begins after the fight had started, but it shows the fight and the circumstances leading up to the stabbing itself. In the video, of course, there's no audio because it's inside and upstairs. So as you're looking down to the video, you see all the parties disperse after the stab, after the victim was stabbed. And it wasn't clear initially that the victim had been stabbed. And you can see the defendant go off across the parking lot and throw the knife and then the officer pulls in. As the officer pulls in the body cam video, he didn't start it right away. So you have a gap between when the defendant... So the spraying of the mace was not shown in either video. But in the video from upstairs, you can see the reactions from the people who did get sprayed in the face. You can see Roger, which is the defendant's father. Excuse me, Ms. Bella. Yes. What is on the video at issue that is relevant to the issues here? So comparing those two videos, on the video from the body cam, you can see close up of the defendant. Whereas in the video upstairs, you can't see her reacting differently to people who are known to have been contacted by the mace. So the father, in a couple of the videos, you can see him wiping his eyes and behaving as somebody who had been sprayed with mace. Whereas in the other videos, the only close up that you have of the defendant. So it would be relevant to show whether she was showing any signs at all of having actually been sprayed with the mace. Now, whether that goes to, you know, whether being sprayed with mace justifies a murder is a separate issue. But the video itself shows the circumstances that were unfolding during the time that she was recovering from being sprayed by mace. Did the Assistant State's Attorney argue that in closing argument? No, because this wasn't raised as a specific issue. What was argued was that the defendant, the defendant's claim that she was sprayed by mace. So as far as whether you, you know. No, no. What I'm asking is, did the prosecutor, if you're saying that's why it was, um, submitted, then did the prosecutor, you're telling me the prosecutor did not argue in closing, hey, the importance of this video is that you can see she's not wiping her eyes. She must not have been sprayed. Was that even argued in closing argument is what I want to know. It's a yes or no question. No, it's not. And, and the, the, the analysis that I'm, I'm discussing now is related to, um, had, had counsel raised this as an objection, these would have been factors that would have been argued to the trial court when the trial court was determining whether to sustain that objection. So as on appeal, while defendants arguing that the, uh, that the, uh, that it was not trial savvy, there was no effective reason for not objecting. Um, one of the questions is whether that would have had any difference in the outcome of the trial. So if the trial court would not have sustained the objection, then, then there would have been no effect on the, uh, on the outcome. Miss Bella, a question. How long is this video? This one that we're, that justice McDade asked about the one that we're talking about with the victim on the ground is, is approximately two minutes. Um, in the beginning of the, no, no, no, that's okay. About two minutes out of that two minutes. How much time is the defendant on that video scene? Um, the defendant's face, um, well, she's in the back of the car. No, no. So is the defendant shown on that video at all during those two minutes? Yeah, you can see her. And yes, she's in the car. And, um, and then later in the video, the officer gets in the car and moves the car and he's asking her questions about whether she's okay. So, um, so the, the video is, it's not the so there's part, um, and, and excuse me, was the video edited? Um, uh, yeah, the whole entire video was not played. Yeah. Um, I don't know as far as like segment wise, if particular parts were cut out, but the entire video was not played. Um, also in, in the video itself, the victim is only initially seen in the very beginning. And it's the, the argument on appeal from the defendant is the reactions of family members. Um, so in general, the, the, the video, you know, if you're comparing it to the other video as cumulative evidence, then the court would have been considering whether there's this difference between these videos. And if the court was weighing the relevancy of the video, it would go to show the court would have considered whether it was relevant to a material issue, a material issue in the case was the defendant's claim that she, um, had been sprayed by mace. And the video would go to show whether there's any indication that the defendant was behaving as though she had been sprayed with maize. So, um, again, these are, these are, would have been the factors that the trial court would have had to consider and weigh in determining whether to suggest counsel should have on appeal. So then the second half would be whether the video was more prejudicial than proven. And if the court had excluded the video by an objection, um, then the state's alternative argument is, um, the defendant, if the trial court had found the evidence in the miscibles, unlikely that there would have been a light, a different outcome in case, because even without that video, you have the other video from upstairs showing the actual stabbing, showing the, um, the other videos showing reactions of the people who had, um, confirmed been sprayed by the mace, including Roger, the defendant's father. Um, and, um, so the defendant says that she was blinded by pepper spray, engaged in mutual comment and worried about seriously injuring her neck and felt that stabbing Marquisha was the only way to escape the situation. So because the defense was based on the defendant's claim that she was acting in self-defense, the question of guilt boiled down to whether the jury believed her claim that she had been sprayed in the mace in the face with the mace, and that she was justified in stabbing the victim because of being sprayed in the face by mace. Um, so even ignoring the officer's body camera video, you have the other video evidence that was taken from the upstairs second floor window of the bank building. Um, you have the, um, um, the 911 phone call in which prior to this happening, because the officers initially responded to the bank because of a call, um, that they were looking for, uh, Marquisha or her mother called the police to report that the defendant was there because they were looking to serve her with an order of protection because of a prior conflict with the defendant. So are you saying, Miss Bella, that that tape was not necessary to prove the defendant guilty? Well, uh, the 9-1-1 tape, that's that issue here? Oh, the video. Um, I, no, I don't think it was not necessary. I think it went to go to rebut the defense, the, the, uh, the self-defense claim that she was unable to see and blinded by mace because her, her demeanor and, and, and all that you see in the video does not support that as a defense. But as an alternative argument, if, if it can be shown that the trial court would have sustained an objection to the admission of this and the video was therefore excluded, even then I think that the, the evidence would have supported the state's, uh, claim of first degree murder. Um, and I don't think that the evidence would have shown even without the video that she was, um, acting in self-defense because of the prior conflict. And I noticed that in the, the, in the defendant's brief, there's a lot of discussion about, first of all, whether Markeisha Jeffries was supposed to be at the bank and whether there was a, uh, uh, some sort of a conflict going for that. The conflict in this case was, um, we don't have all the details, but the, the victim's vehicle had been set on fire and there was some report that there was a conflict going on and she saw it and was given an order of protection. And that when she called the police from the bank, she was asking them to come there because they had been unable to serve her with the order of protection. Counsel, had she been given an ex-party emergency order of protection or a plenary order of protection that she was trying to get served? I believe it was, uh, I believe it was the, um, initial, it was not the plenary because I think they had not seen it. So the emergency order would have been issued, um, and then the court would have had to have a hearing to, um, to grant the plenary order. And I think it was very close in time to where that second, because it indicated that she had not received the emergency order. So I believe. The pre-sentence investigation indicated that it had been dismissed. The, um, I believe. The order of protection. And I saw that and I, at the time of this incident, I think it had not been dismissed. They believe that it was dismissed after the fact. Okay. Um, I mean, with the, with the victim being deceased, I don't, you know, they wouldn't have been able to have a hearing on the plenary order and the, um, so I, I don't, I don't have all of the details regarding the, the, uh, proceedings regarding the order of protection, but that's why the police were initially called to the scene was because she, she contacted the police, um, on the 911 video, um, and called the police to the scene. So when the police first got to the scene, they were unaware that they were responding to a stabbing, um, because the stabbing happened in between her call for service and the profits arriving on scene. Um, so, um, so to the extent that, um, council would have objected if the trial court had granted it, um, I, the, the state's position is that the defendant can't show prejudice in that she can't show that she would have had a different outcome in trial. There's a lot of evidence of, about a background, um, conflict between them. Um, and I think that the defendant's argument that Markeisha had no business being at the bank is, is unavailing because given it was a mediation for a family law dispute, the only people who were in theory supposed to be there was the mother and the father. Um, but I think both, both parties to that family law mediation brought all of their family with, um, one received a ride and then the other one, um, received a ride and brought other family members too. The mother called the victim to the bank, um, and they contacted the police to serve the order of protection. In the meantime, the stabbing happened. Um, I see that. For what it's worth, Miss Bella, the order of protection was dismissed two months before this incident. Oh, this is, um, you know, just in the record where it discusses why she contacted the police. Um, she was contacting the police because they had been unable to find and serve the defendant with the order of protection. So, I mean, without looking at the, um, you know, the proceedings and why it was dismissed, um, at that point it sounded as though when she contacted the police, it's because she had never been served with the initial emergency order. So I, I, I don't have an answer for why that happened or, um, any of the details related to that other than that why she called the police. Um, unless any, unless there are any further questions, I see that I've run my time. Do I have no further questions? Um, I have no questions. Okay, Miss Taylor, any rebuttal? Yes, thank you. So I re-watched the video this morning, um, several times. It's about an hour long and in the first two minutes you cannot see the defendant's face at all. You cannot see her anywhere in the video. It's, it opens, it's silent for 30 seconds. It opens with Mr. Parker, um, who is the brother over, uh, Miss Jeffries. You can't hear what they're saying, but when the audio eventually comes back in, you hear him, that's when he's yelling, talk, you should talk, think about your kids. The officer runs to the rear of the vehicle, looks in the trunk for something, run, you see him waving on, um, another emergency vehicle. He runs back to the front of the car and, um, and tells, uh, Miss, uh, Jamison, please back up. And that's when she screams, you know, that's my daughter. Um, I really searched to even see if you could see defendant's face through the windshield of the car, but you can't. I'm, I'm pretty sure the first time that she's seen on video is about seven minutes in when the officer opens the door and asks her something. Um, and that was, that part was not played for the or not she was maced and her demeanor when she was maced in the part that was showed to the jury. So what you're saying is the jury only saw what you're characterizing as a, what the judge characterized as the disturbing part and actually didn't see the part that would at least is, could be argued, showed something relevant. So they didn't see what might have shown something of some relevance, but they did see the disturbing part. And you're saying when we watch it, those two minutes, we will not see a good clear shot of her face, what she was doing about her face. No, you will not. Um, and so as far as, so that the video is just, just not helpful to any really issues of fact in this case or for anything other than just how graphic it is to all the jury saw. Um, and this definitely swayed them. I mean, the, the evidence they, they asked the question, they were at least considering whether or not the, the justification was appropriate in this case. And they, um, they heard that evidence. They heard the evidence about the, um, defendant being unwilling to extricate herself from the fight and who threw the first punch. Um, some people said it was defendant. Some people said it was Jeffrey's. Jeffrey sprayed the mace first and regardless of whether the, um, order of protection was served, there was bad here for her, for Jeffrey's who was, you know, apparently she said that she was afraid and didn't want to be there alone. When defendant showed up, she went to where defendant was, she called the police. Um, so there's just, there's bad blood here. This was a mutual combat situation. It's, there was definitely evidence that self-defense or unreasonable belief that she needed to use self-defense was present in this case. And this horrific video definitely swayed the jury. Um, so for the, for these reasons, Ms. Lee respectfully requests that this court reverse her conviction and remand for further proceedings. And if the court does not remand, she requests that a sentence closer or that this court reduce her sentence to a more reasonable length of time. Thank you. Are there any further questions? No. No. Okay. We thank you both for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. Now stand in recess for a panel change.